This case was argued by Mr. Woods for the plaintiff, and by Mr. Haywood
for the defendant.
Few questions have been more frequently agitated in this State than that concerning the extent of a husband's property in slaves belonging to the wife, but not reduced into possession during the coverture. Though the opinions of the judges on this subject have been different under the former judiciary establishment, and no judgment of sufficient authority was then given so as to settle the law, yet several recent decisions of this court have distinctly expressed the sentiments of all its members. In the Court it has been unanimously agreed in each particular case, that slaves to which the wife has title, but of which the enjoyment was prevented during the coverture by an adverse possession, do not, upon the wife's death, devolve upon the husband, by virtue of her marital rights. Should it be thought expedient to reconsider the determination, it may save the trouble of some investigation to those who succeed, us, to state the progress of this opinion, and to bring into one view the various cases that have occurred. The first published account of the question is in the case of Whitbie, Administrator, v. Frazier, 2 N.C. 275, where a woman entitled to the remainder in a slave, after an estate for life, married and died before the particular tenant. The husband (583) then died without administering upon his wife's effects, and the plaintiffs, as administrators of the wife, recovered the negro in an action of detinue. It appears that the action had before been brought be the husband's administrator, and the case coming on before three Judges, two were of opinion that it was misconceived, and the third, though he then thought that the administrator of the husband was the proper person to sue, yet afterwards changed his opinion and concurred in the judgment rendered for the administrator of the wife. *Page 493 
This, then, may be considered as a decision of all the Judges of the State, so lately as the year 1796, affirming the proposition, that to entitle the husband as such, he must reduce the negroes of the wife into possession during the coverture. If he does not, and survive the wife, he can recover only as her administrator, to which character founding his right as her next of kin, he may recover her choses in action. The next isHynes v. Lewis, ante, 131, where a woman entitled under a testament to a remainder in a slave, married and her husband died before the particular tenant for life; the widow then married again, and after the termination of the life estate, the contest arose between the executors of the first husband, and the second husband. Mr. Haywood, in his report of this case, states that he was informed that two Judges decided in favor of the executors of the first husband. An opinion to that effect might have been given, but the case was pending afterwards, and came on before three Judges in 1799. Upon the supposition that it was so decided, the reporter questions its property, and introduces the following pertinent remarks: "The authorities upon which the decision is grounded will not support it. Neither will H. Bl., 538 (the authority now relied upon), for though a vested interest in remainder, was there held to vest in the husband, that was the case of a chattel real; and 2 Atkyns, 124, and the authorities cited in Whitbie v. Frazier, supra, prove that vested interests in the wife, not reduced into possession, do not go to the husband as such, but as next of kin to the wife, where he survives her; whereas, if they went to him as husband, because vested interests in the wife, there would be no occasion to claim (584) them, nor indeed could he claim them as administrator of the wife. These negroes were but choses in action of the wife of the first husband, which he had never reduced into possession." When the same case was afterwards argued before three Judges, it appears that no judgment was given in consequence of one Judge not agreeing with the other two, who were clearly of opinion that the second husband was entitled to recover; and the reasons of their opinion appear to be in exact consonance with the quotation just made. Taylor's Reports, 44. The difficulty which has ever embarrassed the question, consists in ascertaining the true definition of a chose in action. For if slaves, of which the right is in the wife, although separated from the possession during the coverture may be considered as things in action, then it is conceded, and indeed cannot be doubted, that they do not survive to the husband as such. On the other hand, if they are not choses in action, then they belong to the husband, who may, after his wife's death, sue for and recover them, as well as during her lifetime. In 2 Black., 430, chattels personal (or choses) in possession, are contra distinguished from chattels personal (or choses) in action. As examples of the former, the author *Page 494 
enumerates, not only money, but jewels, household goods, and the like. If these chattels, or any others that are the subject of property, are kept from the owner by an adversary possession, they must equally come within the definition of things in action, as debts upon bond, contract, and the like. Is there any rational ground of distinction between a bond due to the wife and a chattel detained from her? Can a plausible reason be assigned why the husband should be deprived of one, if he fails to reduce it into possession during the coverture, and be entitled to the other? As the law confers upon him a power of obtaining an exclusive property in both, it seems most proper that he should be deprived of both, if he fail to exert such power. Such has been the opinion of this Court on every case where the question has come forward. The administrators of Neale v. Haddock, 3 N.C. 183, is a direct decision to that (585) effect, as well as a case from Wilmington, McCallop v. Blount, ante, 314.
The law may therefore be considered as settled, so far as the decisions of this Court have any weight in that respect; and as the property is peculiar to this country, it is impossible to acquire additional information from the books to which we usually resort. But since the decisions of the cases in this Court, the report of a case in Virginia has been published, part of which is so applicable, as well to the general principle as to the particular question made in this case, that we are desirous to state it at some length, for the satisfaction of those who have not the book to refer to.
William Rowley made his will in 1774, devising to Lettice Wishart and Catharine Taylor sundry slaves, together with the residue of his estate, subject to the payment of his debts and legacies. John Wishart and Richard Taylor, husbands of the legatees, were appointed executors, both of whom qualified, but Wishart principally acted, and worked the slaves on the testator's land. After the testator's death, Wishart made his will in 1774, and gave all his slaves to be equally divided between his two sons, William and Sidney, and his daughter, the plaintiff; but the property was not to be enjoyed until his sons came of age. After the death of Wishart, the slaves of Rowley were divided between the defendants, Lettice and Catharine Taylor, according to Rowley's will. Lettice Wishart, after the death of her first husband, John, intermarried with the defendant, Michael Wallace. The bill was brought by the daughter of John Wishart, claiming a proportion of the slaves under the testament. From this summary of the case, it appears that the very same question of law arises out of the facts which has been so frequently litigated in this State; and it will appear in the sequel that the application of the same principles which governed the decisions of this Court produced the same result in the midst of the Judges in Virginia, all of *Page 495 
whom are persons of more experience than we pretend to be, and possess more leisure and a better opportunity to investigate abstract principles of law. There is in that state an Act of the (586) Legislature, the 4th clause of which is in the following words: "And that where any slave or slaves have been or shall be conveyed, given, or bequeathed, and have or shall descend to any feme covert, the absolute right, property, and interest of such slave or slaves is hereby vested, and shall accrue to, and vested in, the husband of such feme covert; and that where any feme sole is or shall be possessed of any slave or slaves, the same shall accrue to and be absolutely vested in the husband of suchfeme when she shall marry. Upon a superficial view of this clause it might appear that the slaves of the wife were meant to be vested in the husband without taking possession of them. This was one of the grounds of argument employed by the counsel claiming in behalf of the legatees under the will of John Wishart. But the Court overruled the doctrine, and decided it as a point resting on common law principles. One of the Judges, after quoting at length the observations of Judge Blackstone, 2 v., 433, proceeds thus: "This passage I shall hereafter refer to as giving the most modern and perspicuous explication of the doctrine on this subject, at present I only wished it to be remarked, that the personal property of a wife is said to be absolutely vested in the husband, at the same instant, that it is declared, that if he does not reduce them into possession during the coverture, they shall remain to the wife if she survives him. Here, then, is a decisive quotation, from an eminent and accurate writer on the common law, showing that the words `absolute property in the husband' are not to be construed as dispensing with possession in the case of chattels." Another argument in support of the first husband's right was, that by the rules of the common law, the gift of personal things to the wife during coverture, vests them absolutely in the husband, for which were cited 2 Com. Dig., 82; Bunbury, 188; 1 Roll. Rep., 134; 1 H. Bl., 109; 3 Lev., 803. This, however, was received by the President of the Court with much surprise, who declared that it was contrary to every idea he had entertained on the subject, and that on revising the cases cited, he could not discover the smallest reason to doubt but that they prove a contrary (587) doctrine. That they lay down the general position, that such a legacy devised to the wife, vests in the husband; but immediately explain how it vests; that is, subject to the conditions of his reducing it into possession, or making a disposition thereof in his lifetime, or surviving his wife; otherwise that it will survive to the wife. The same Judge observes, that in his long experience, he does not recollect an instance where the slaves of a feme covert or sole, when the right came to her, if they were not taken possession of by the husband during the coverture, *Page 496 
and she survived, were not yielded to her. The case before the Court at present depends upon the question, Whether the wife can be joined with the husband in an action of detinue, instituted to recover a negro of the wife's detained before and at the time of the coverture. The property has never been possessed by the husband, and consequently would, upon his death, have survived the wife. It is a chose in action, which belongs to him only in the event of his converting it into a chose in possession. If the wife die before this is done, the husband can entitle himself, not in the virtue of his marital rights, but in the character of her administrator.
Supposing these principles to be clear and sanctioned by authority, and analogy arises out of them which must be applied to the remedy. There is a system to be followed, and a harmony which cannot be disturbed without introducing confusion and injury to the rights of the citizens. It is laid down in all the books, as an universal principle, that where a chose in action of the wife is to be reduced into possession, and an action is necessary for that purpose, it must be brought in the names of the husband and wife. For as the right would survive to the wife, she ought to be joined in the remedy in order that she may prosecute the suit to judgment, in the event of her husband's dying before or, if after judgment, that she may bring a scire facias thereon. 3 Term Rep., 627. And if the cause of action will survive to the wife, then although it arise during the coverture, she ought to join. 1 Role., 347; 1, 49. (588) But if the wife cannot have an action for the same cause, if she survive her husband, the action shall be by the husband alone. 2 Comyn. Dig., 107. To yield to the objection made to the wife's being joined in the present suit, would, it is conceived, overturn these principles. (1) Because it is manifest that if her husband died before he obtained possession, or at least judgment for slave, the right to recover it would survive to her; (2) Because, to say that the husband was competent to sue alone, would be to defeat her right without any consent or laches on her part; and by the lapse of time, to take away a privilege which the act of limitation has secured to feme coverts. Some dicta have been shown from the books which seem to countenance the idea that the action of detinue for the wife's goods must be brought by the husband alone. But it is probable that if the original cases could be examined, it would appear that such actions by the husband alone were sustained only where the goods had been in his possession during the coverture, either actual or constructive. In that case the property is completely his own, and the right would devolve to his representatives upon his death, and would not survive to the wife. This is rendered likely by what is said in Viner, Title Beson Ferne, 30. That the husband and wife may join in detinue for the wife's goods, bailed by the *Page 497 
wife before the coverture. And so it is said with respect to replevin for her goods taken when she was sole.
In addition to this, it is to be remarked that the action of the detinue has, at least in this State, taken a range very wide of its original design, and been applied to transactions which were only formerly conceived to fall within its reach. It is defined in the old books as a remedy founded upon the delivery of goods by the owner to another to keep, who will not afterwards deliver them back again. Fitz. N. B., 323, and 2 Bl., 152, it is said that to ground an action of detinue which is only for detaining it, is a necessary point, among others, that the defendant came lawfully into the possession of the goods, as either by delivery to him, or by finding them. Hence it was that the wager of law was permitted in this action, and which grew out of the confidence reposed in the (589) bailee by the bailor. At present, however, the action is applied to every case where the owner prefers recovering the specific property to damages for its conversion, and no regard is had to the manner in which the defendant acquired the possession. Viewing the primitive use of the action, it is possible that a defendant claiming a chattel under the bailment of a wife when sole, might be considered as becoming on the marriage, a trustee for the husband; that the possession of the bailee was the possession of the husband, who therefore had a complete and exclusive right to bring the action. All this, however, fails in its application when the defendant claims an adverse possession under and adverse title, which happens in almost every instance. Then the husband is in pursuit of possession, the very thing which forms an indispensable ingredient in his title, and as he claims it in right of his wife, her name should be used in the action. For if brought by him alone, his representatives cannot revive it; for how can they recover that which their testator or intestate had no right in his life time?
We shall conclude with the statement of a case made by the President of the Court of Appeals in delivering his opinion on the case above cited. The material circumstances correspond entirely with the principal case: "Mrs. Harrison, when sole, was entitled to slaves which then lived with her mother, who, upon one of them, a woman, misbehaving, sold her to Valentine, just before the daughter married. Harrison some years after the marriage brought detinue, in the names of himself and wife, to recover the woman and her children from Valentine, who pleaded the act of limitations. More than five years had elapsed from the marriage, but Mrs. Harrison was an infant at the sale, and the suit was within time after her coming of age. It was insisted for Valentine that the act vested the right in the husband on his marriage; that he had improperly joined the wife; and that her infancy did not prevent his being barred. It was answered that the act only vested it as a chattel, *Page 498 
(590) that it was still the wife's personal interest, which would survive to her if not reduced into possession during the coverture, and therefore that she was properly made a party; and that the true question was whether she was barred. The court was of opinion in favor of the plaintiffs and gave judgment against Valentine, deciding, in fact, that the right would survive to the wife, if not reduced to possession in the husband's lifetime. The very case now before the Court. I believe there is no instance of an husband's suing under either part of this clause, in his own name, for his wife's slaves without joining her, except Bronaugh v. Cocke, and there the omission was made an objection."
For these reasons, we are of opinion that the wife was properly joined with the husband in an action of detinue brought to recover her slaves, which had not been possessed by him.
Judgment for plaintiff.
Cited: Norfleet v. Harris, post, 627; Armstrong v. Simonton, 6 N.C. 352;Weeks v. Weeks, 40 N.C. 120.
NOTE. — On the first point, see Norfleet v. Harris, post, 627;Walker v. Mebane, 5 N.C. 41; Spiers v. Alexander, 8 N.C. 67, and Nealev. Haddock, 3 N.C. 183, and the cases referred to in the note thereto.
On the second point, see Charles v. Elliott, 20 N.C. 606. *Page 499 
(591)